## VITI and another *v.* TUTTON, Collector, etc.*

*(Circuit Court, E. D. Pennsylvania. October 24, 1882.)*

1. CUSTOMS DUTIES—MANUFACTURE OF MARBLE—PROFESSIONAL PRODUCTIONS OF A STATUARY—SECTION 2504, REV. ST.

     The "professional productions of a statuary or of a sculptor" include all the artistic work of a professional statuary or sculptor produced in the exercise of his profession, whether the creations of the artist or copies of the creations of others.

2. SAME—RATES OF DUTIES.

     Such importations are liable to a duty of 10 per centum *ad valorem,* and are not to be classed with "all manufactures of marble, not otherwise provided for," which are liable to a duty of 50 per centum *ad valorem.*

Motion for Judgment upon Special Verdict.

The jury found the following special verdict:

That during the years 1879 and 1880 the plaintiffs were partners, trading as Viti Brothers, and the defendant was, during said time, collector of customs for the port of Philadelphia; that between the thirteenth day of No-

*Reported by Albert B. Guilbert, of the Philadelphia bar.

vember and the twentieth day of December, A. D. 1879, the plaintiffs imported into the port of Philadelphia six boxes containing statuary: One marked No. 1076, containing statues, two boys; one marked No. 1074, containing an angel sitting in the attitude of writing; one marked No. 1077, containing an angel standing in the attitude of praying; one marked No. 1078, containing a statue representing summer; one marked No. 1079, containing a statue representing autumn; one marked No. 1080, containing a statue representing winter.

3. That the statues of the two boys were taken out and sculptured from antique original models, and that the author of those models is unknown.

4. That the statues of the two angels were taken out and sculptured from original models made by the sculptor Achille de Cori, a pensioner of the government at Rome; that he is a professional sculptor, and as such enjoys a good reputation, and is known in Carrara as a professional sculptor, and won at the Royal Academy of Fine Arts of Carrara the prize of a government pension at Rome.

5. That the said three statues, representing summer, autumn, and winter, were taken out and sculptured from original models designed and executed by Carlo Nicoli, an honorary member of the Academy of Fine Arts at Carrara; that he studied sculpture in the Academy of Fine Arts there, and then in Florence and Rome; that he enjoys the best reputation as a professional sculptor, and is recognized in Carrara as a professional sculptor; that he obtained the prize of the government pension at Rome; that for his professional merits in sculpture he was decorated by the government of Spain; and that in open competition he won the prize of three years' government pension in the Academy of Fine Arts at Carrara, and is also an honorary member of the Academy of Fine Arts at Madrid, Spain, and Urbino, Italy, and obtained several prizes at the artistic exhibitions of Florence, Parma, and Madrid.

6. That all the said statues contained in the said six cases were executed in the studio of Pietro Salada, by Giovani Padula and Alessandre Gemignani professional sculptors, under the direction of the said Pietro Salada, and that the said Pietro Salada has been a professional sculptor in Carrara for the last 34 years.

7. That with the exception of the "Two Boys," which were executed from antique originals, the other statues were sculptured for the first time from the originals expressly executed by the said De Cori and Nicoli, and were the first productions from said models.

8. That the cost of the "Two Boys" was 300 lire each, or 600 lire; and of the two angels 690 lire each; and of the three seasons 480 lire each.

9. That defendant, as said collector, exacted from said plaintiffs thereon duties as follows: 50 per cent. *ad valorem*; which duties were paid by the plaintiffs on the dates mentioned in the bill of particulars, to-wit, March 24, 1880.

10. That on February 8 and February 9, 1880, the plaintiffs made due protest against the exaction of said duties, claiming that said marble statuary was dutiable at 10 per cent. *ad valorem*.

11. That plaintiffs made due appeal to the secretary of the treasury from said decision of said collector, who, on March 18, 1880, affirmed the said decis-

ion of the said defendant, whereupon, within 90 days thereafter, plaintiffs brought this suit.

12. That the amount exacted by the said defendant, over and above the amount claimed to be due by the plaintiffs, on the boys was - $43.60

On the two angels, - - - - - - - 97.60

And on the three seasons, - - - - - - 101.20

In all amounting to the sum of - - - - - $242.40

And the said jurors say that they are ignorant, in point of law, on which side they ought, upon the facts, to find the issue; but that if the court should be of opinion that the plaintiffs are entitled to recover the money paid as duties on the statues of the two boys, above the amount claimed to be due by the said plaintiffs, then they find for said plaintiffs in the sum of $43.60, with interest thereon.

That if the court should be of opinion that the plaintiffs are entitled to recover the money paid as duties on the two statutes, representing two angels, above the amount claimed to be due by the said plaintiffs, then they find for the said plaintiffs in the further sum of $97.60, with interest thereon from March 30, 1880.

That if the courts should be of opinion that the plaintiffs are entitled to recover the money paid as duties on the three statues, representing the seasons, above the amount claimed to be due by the said plaintiffs, then they find for the said plaintiffs in the further sum of $101.20, with interest from March 30, 1880.

That if the court should be of the opinion that the plaintiffs are entitled to recover the moneys paid as duties on all the aforesaid statues, above the amount claimed to be due by the said plaintiffs, then they find for the said plaintiffs in the sum of $242.40, with interest thereon from March 30, 1880.

## The decisions of the treasury department are as follows:

Under date of October 27, 1879, the treasury department decided. (Synopsis of Decision, 4266:)

" The term statuary, as used in the law, has a twofold meaning: *First*, the finished production of a sculptor or statuary; and, *second*, the person who professes to practice the art of sculpturing. Webster defines a statuary, in the sense last above used, as one who professes or practices the art of carving images or making statues. He defines a sculptor to be 'one who sculptures; one whose occupation is to carve images or figures.' The words under this definition are nearly, if not quite, synonymous.

" In a note to a decision (3942) of March 31, 1879, the department has defined what articles shall be admitted as the work of an artist under the provision which admits the productions of American artists free of duty. It is there held that a statue in bronze or marble may be the work of an artist, although the identical figure imported may have been cast or carved entirely by other hands than his own, if the model from which the figure was cut or cast was the creation of the artist. The distinction between an artist and an artisan is given by Webster as follows: 'An artist is one who is skilled in some one of the fine arts; an artisan is one who exercises any me-

chanical employment. A portrait painter is an artist; a sign painter is an artisan.' Something of this direction must be inferred from the language of the provision for statuary before referred to. If congress had intended to admit all statuary under the provision for statuary, whether the work of an artist or a mere artisan, the word 'statuary' would have been sufficient. It, however, evidently intended a limitation of this general sense when it declared that the term 'statuary,' as used in the laws, shall be understood to include the professional productions of a statuary or of a sculptor only. The key to the intended limitation seems to be found in the word 'professional.' The distinction between a profession and a trade, or mere occupation, is well understood in the common use of language. One of the definitions of the word 'profession,' as given by Webster, is 'the occupation—if not mechanical, agricultural, or the like—to which one devotes himself.' In both the common and the critical use of language the word 'profession' implies a higher order of employment than that of a mechanic or artisan, and it is difficult to attach any meaning whatever to the restrictive clause of the statute, unless it be that the term 'statuary' shall include only the productions of artists, as distinguished from mechanics or artisans.

"This view is fortified by the manifest intention of congress in other provisions of the tariff laws adopted to encourage works of art, as, for instance, in the provision for the free admission of articles imported for the use of any institution established for the encouragement of the fine arts. Also in the provision for the free admission of works of art imported for presentation to national institutions, or to any state or municipal corporation. Also in the provision that paintings and statuary imported for exhibition by any association for the promotion of science, art, and industry may be admitted free, to be exported within six months, under section 2512 of the Revised Statutes. Also the provision that paintings, statuary, and other works of art, the production of American artists, may be admitted free of duty.

"In the view of the subject thus presented, the quality of the material, whether veined or statuary marble or sandstone or granite, is immaterial; nor, indeed, can the artistic merit of the particular statue in question be the criterion for classification. If it be the production of a professional statuary or sculptor in the sense above defined, it is statuary within the intent of the law. On the other hand, if it be but a mere mechanical copy, however perfect, of Phidias or Praxiteles or other ancient artists, it is not the professional production of a statuary or sculptor, but is to be regarded as a manufacture of marble, subject to a duty of 50 per cent. *ad valorem.* Invoices of statuary from foreign countries, to be admitted at a duty of 10 per cent. *ad valorem,* therefore, must be accompanied by a certificate from the artist, declared to before a consular officer of the United States, showing that the former is a professional sculptor or statuary, wherever practicable."

Under date of February 6, 1880, (Synopsis of Decision, 4416,) the treasury department states that "the consuls discussed the subject in the light of the decision of this department of the twenty-seventh of October, 1879, which had for its object a definition of the word 'statuary' as used in the law, which declares that that term shall be held to include only the professional production of a statuary or of a sculptor. A distinction was therein made between figures

which were the work of mere artisans and those produced by artists; and to admit figures which were the productions of professional artists, it was held necessary that a certificate from the artist, declared to before a consular officer of the United States, should accompany the invoice. From the report of the consul at Carrara, it appears that large numbers of persons are engaged in business at Carrara, manufacturing cemetery figures representing Hope, Faith, Gratitude, Sailor Boy, and other like productions, which are made by workmen under their control, and that they turn out duplicates of these figures in any desired quantity, and that they are held for sale accordingly. The consul at Carrara designates this character of work as 'slop-work;' a term aptly descriptive of it, viewed from an artistic sense. It evidently was not the design of congress, when enacting that statuary, the professional production of a sculptor or statuary, should be admitted at a duty of 10 per cent., to favor the importation at that rate of duty of this class of merchandise.

"The terms 'professional productions of a sculptor' and 'productions of a professional sculptor' are considered as having the same signification, and the articles must be the productions of a professional sculptor or statuary, in the true definition of that term, in order to be admissible at a duty of 10 per cent. Professional artists are understood generally to execute figures to the best of their ability, either upon an order given for a special production, or according to their own conception, wrought out after months of patient labor. This department, therefore, holds that the class of work specially alluded to by the consul at Carrara, and before described, is not the production of a professional sculptor, and that consular officers should refuse to give the certificate required by the decision of October 27, 1879, in such cases. The consul at Rome, referring to the character of marble figures largely shipped from Carrara to this country, states that they are made by men who call themselves professional sculptors, but that they are not real works of art, and are, in fact, nothing but manufactures of marble made by good artisans. The following is an extract from his dispatch, further in pursuance of the subject:

"'From an artistic point of view—and it seems to me that this would also meet the needs of the revenue in part—I should be disposed to consider as marble manufactures, and not as works of art as meant by the law, all works coming from a business house, whether a single individual or a firm, and especially the latter, and not from the studio of a single sculptor. It would be for business purposes, for the purpose of manufacture, and not for art, that several sculptors would combine into one firm or establishment. Such a business house could readily be distinguished by its sign, by its clerks, by the printed headings of its bills, and by the knowledge of its business which, with a little patience, could readily be gained by the consul.'

"These views correspond with those entertained by this department, and consular officers generally, when considering the subject of granting certificates under the circular of June 10, 1879, should act in accordance with the general views herein expressed."

*Edward Shippen,* for plaintiff.

*John K. Valentine,* Dist. Atty., for defendant.

McKENNAN, C. J. This suit was brought to recover back alleged excessive duties exacted upon the importation of a number of pieces

of statuary. A special verdict has been found which presents the single question whether the duty imposed and paid is authorized by law. This question is to be answered by determining the meaning of section 2504, Schedule M, of the Revised Statutes, which is as follows:

"Paintings and statuary, not otherwise provided for, 10 per centum *ad valorem.* But the term 'statuary,' as used in the laws now in force imposing duties on foreign importations, shall be understood to include professional productions of a statuary or sculptor only."

The object of the act is doubtless to encourage a taste for art, and hence to admit the work of professional artists at a low rate of duty. The plain meaning, then, of the words of the section would seem to be that dutiable statuary shall include all the artistic work of a professional statuary or sculptor produced in the exercise of his profession.

But it is urged that only the artist who conceived the ideal of the corporealized image is entitled to the benefit of the low duty, and hence that the statuary or sculptor who has modeled the work which he or others have finished is alone within the category of the section. We cannot accept this construction of the section, because it involves an arbitrary restriction of the common and well-understood meaning of its words. A sculptor is "one whose occupation is to carve wood, stone, or other material into images or statues." A statuary is "one who professes or practices the art of carving images or making statues." The "professional productions" of a statuary or sculptor are the practical results of the practice of his profession or occupation. In other words, they are "images or statues" produced by the exercise of his professional skill.

In this sense of the words of the statute it clearly embraces all the artistic work of a statuary or sculptor who pursues the employment of his class as a profession. We cannot otherwise construe them without wrenching them from their generally-accepted signification. We cannot adopt metaphysical or speculative definitions of them which have this effect; nor can we change the meaning of the statute by injecting into it a word or words which the legislature has thought proper to omit, and which is obviously necessary to authorize the construction contended for by the defendant.

All the statues described in the special verdict, except those of the two boys, are confessedly comprehended by either of the contested constructions of the statute, and are, therefore, subject to a duty of only 10 per cent. *ad valorem.* The two boys were executed from antique

models, but they were the product of the labor and skill of professional sculptors, and hence were their "professional productions," within the purview of the law, and are subject to the same rate of duty with the others.

Judgment is therefore directed to be entered on the special verdict in favor of the plaintiffs for $242.40, with interest from March 30, 1880.

A writ of error from the supreme court of the United States has been taken in the above case.